UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CINDY AIRSMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV1685MLM |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael Astrue ("Defendant") denying the application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., filed by Plaintiff Cindy Airsman ("Plaintiff"). Plaintiff filed a Brief in Support of the Complaint. Doc. 16. Defendant filed a Brief in Support of the Answer. Doc. 19-1. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). Doc. 7.

## I.
## PROCEDURAL HISTORY

On December 13, 2006, Plaintiff filed an application for disability insurance benefits. Tr. 80-82. Plaintiff's claim was denied, and she filed a request for hearing before an Administrative Law Judge ("ALJ"). Tr.10, 44-50. After a hearing held before an ALJ, the ALJ found Plaintiff not disabled through the date of the decision, February 19, 2009. Tr. 10-16. On August 10, 2009, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. As such, the decision of the ALJ stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § §

416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations

omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically

determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226

F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d

7

882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

**III.**
**DISCUSSION**

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleged that she became disabled on November 30, 2006.[1] The ALJ found that Plaintiff had the severe impairment of degenerative disc disease; that she did not suffer from an impairment or combination of impairments which met a Listing; that she had the RFC to engage in the full range of sedentary work; that Plaintiff was unable to engage in her past relevant work; that there were jobs existing in significant numbers in the national economy which Plaintiff could perform; and that, therefore, Plaintiff was not disabled. Plaintiff alleges that the decision of the ALJ is not supported by substantial evidence because the ALJ erred in his RFC assessment. Plaintiff also alleges that the ALJ's decision is not supported by substantial evidence because the ALJ improperly discredited her.

**A.    ALJ's Credibility Determination:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole, and a court cannot substitute its judgment

---

[1] Plaintiff initially alleged she became disabled on July 14, 2006. Tr. 80. She subsequently amended her onset date to November 30, 2006.

for that of the ALJ. Guillams V. Barnhart, 393 F.3d 798, 801(8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered medical records which suggested that Plaintiff failed to follow medical advice. In this regard, the ALJ considered that Ravi Shitut, M.D., reported in March 2007 that Plaintiff was overweight and that, when confronted about her smoking, Plaintiff said that she had

9

smoked for thirty years and asked how the doctor expected her to quit; that Dr. Shitut also reported in March 2007 that "fusion surgery in light of [Plaintiff's] body habitus and smoking was likely to be a failure, as far as pain relief [was] concerned"; that Dr. Shitut reported in May 2007 that Plaintiff said she had stopped smoking, that she had not reduced her weight, which was about 200 pounds, and that Plaintiff was to be cleared by Dr. Shitut before she could have surgery; and that Dr. Shitut reported on July 27, 2007, that Plaintiff had not stopped smoking, that Plaintiff weighed close to 200 pounds, that Plaintiff should weigh about 164 pounds, and that he could not consider surgery until Plaintiff lost weight and stopped smoking. Tr. 248, 250. The ALJ further considered that records from Byrnes Mill Medical Center reflect that Plaintiff continued to be unwilling to lose weight and to stop smoking. The ALJ considered that Plaintiff had been "somewhat non-cooperative with her treating physicians," in that she refused to stop smoking and lose weight. The ALJ also considered that Plaintiff testified that "she was uninterested in surgery because it would mean she would have to stop smoking and would be off of her feet for maybe 6 weeks." Tr. 15. Additionally, the ALJ considered that Plaintiff's doctors did not recommend surgery; rather she "pushed for it." Tr. 15.

An ALJ properly considers that a claimant has failed to follow prescribed medical treatment or advice upon determining the claimant's credibility. See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment is inconsistent with complaints of disabling pain). Furthermore, "a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits." Tome v. Schweiker, 724 F.2d 711, 713-714 (8th Cir. 1984) (citing 20 C.F.R. §§ 404.1518, 404.1530) (holding

10

that ALJ's credibility determination was against the substantial weight of the evidence where the diabetic plaintiff did not follow her dietary and insulin regimen because she "lacked the financial resources and the discipline and education needed to understand and follow a strict dietary and insulin regimen"). A determination of whether an impairment is "reasonably remedial" requires the court to decide "whether [an impairment] is reasonably remediable by the particular individual involved, given his or her social and psychological situation." Id. at 714 (citing Stone v. Harris, 657 F.2d 210, 212 (8th Cir. 1981)). This determination must be supported by substantial evidence. Stone v. Harris, 657 F.2d 210, 212 (8th Cir. 1981). Specifically, objective complaints of pain may be discredited where a claimant ceases to stop smoking upon a doctor's advice. See Wheeler v. Apfel, 224, F.3d 891, 895 (8th Cir. 1996) (citing Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (holding that impairments which are controllable or amendable to treatment including certain respiratory problems, do not support a finding of disability, and failure to follow a prescribed course of remedial treatment, including cessation of smoking, without good reason is grounds for denying an application for benefits). In Plaintiff's case, the record reflects that she was not willing to quit smoking or lose weight when doctors advised that she do so. To the extent that Plaintiff said she did not have surgery because she had two young children and she could not be bedridden for six weeks, the court notes that Plaintiff's allegation that she had to take care of her children is inconsistent with her allegation that she is disabled. Moreover, Plaintiff's children were fourteen and sixteen at the time of the hearing, and by Plaintiff's own admission, they were able to do household chores, including the laundry. Tr. 14-15, 34-35, 37. As such, the court finds that the ALJ properly considered Plaintiff's failure to follow medical advice and that his decision, in this regard, is supported by substantial evidence.

11

Second, the ALJ considered that imaging studies indicated that Plaintiff's impairment was not as limiting as she suggested.[2] Tr. 12-13, 15, 179, 183. While an ALJ may not reject a claimant's subjective complaints based solely on the lack of medical evidence to fully corroborate the complaint, Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996), the absence of an objective medical basis to support the degree of Plaintiff's subjective complaints is an important factor in evaluating the credibility of the testimony and the complaints. See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987). As such, the court finds that the ALJ properly considered reports from imaging studies and that the ALJ's decision, in this regard, is supported by substantial evidence.

Third, the ALJ considered that Plaintiff was allowed to return to work on November 19, 2006, without restrictions. Tr. 13, 236. A lack of significant restrictions imposed by treating physicians supports a finding that a claimant is not disabled. See Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). As such, the court finds that the ALJ properly considered that Plaintiff had been released to work and that the ALJ's decision, in this regard, is supported by substantial evidence.

Fourth, the ALJ considered Plaintiff's daily activities, including Plaintiff's ability to shop, drive, and provide child care. In particular, the ALJ considered that Plaintiff said that she thought she could walk to the grocery store and back home; that she did most of the shopping, but had a friend help her; and that her daughters did household chores. Tr. 14-15. While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a

---

[2] The court has discussed these imaging studies, in detail, below in regard to the ALJ's determination of Plaintiff's RFC.

disabling impairment and may be considered in judging the credibility of complaints. Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Fifth, the ALJ considered that Plaintiff was fired from her last job because she failed to show up during inclement weather and that she did not leave her last job due to her alleged impairments. Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability. Medhaug v. Astrue, 578 F.3d. 805, 816-17 (8th Cir. 2009) (holding that it was relevant that the claimant did not leave his job because of an injury but because he was laid off); Browning v.

Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). As such, the court finds that the ALJ properly considered why Plaintiff left her last job and that, in this regard, the record is supported by substantial evidence.

**B.    Plaintiff's RFC:**

Plaintiff contends that the ALJ erred in his determination of Plaintiff's RFC. The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Anderson v. Shalala, 51 F.3d. 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional."

14

Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo, 377 F.3d at 806. "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5, "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the

individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

Upon making an RFC assessment an ALJ must first identify a claimant's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004).

First, upon determining Plaintiff's RFC, the ALJ copiously considered the medical evidence of record, and concluded that these records discredited Plaintiff's claims of disability. Tr. 12. Although an ALJ may not disregard a claimant's subjective allegations because they are not fully supported by objective medical evidence, an ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th cir. 2002)); 20 C.F.R. § § 404.1529(c), 416.929(c).

The ALJ considered that Paul R. Maynard, M.D., reported, in April 2006, that a right knee MRI scan showed a small focal area of grade II fibrillation in the central aspect of the patella, a small joint effusion, and a prior partial meniscectomy, "but no internal derangement of the knee." The ALJ also considered that a bilateral hip MRI showed no significant joint disease or abnormality. The ALJ further considered that a September 15, 2006 lumbar MRI showed mild anterior and posterior disc bulging at T11-12, disc bulging at L1-2 causing a right lateral stenosis, disc bulging at L2-3 with associated annular tear causing right lateral stenosis, disc bulging and annular tear at L3-4 causing borderline left lateral stenosis, L4-5 disc protrusion with severe central spinal stenosis and severe

16

degenerative changes of the L5-S1 causing central spinal stenosis, and severe degenerative changes of the L5-S1 facet joints. The ALJ considered that Dr. Maynard's diagnosis was symptomatic degenerative disc disease; that he recommended evaluation for an epidural steroid injection; and that Plaintiff received this injection on November 6, 2006. Tr. 12-13.

The ALJ also considered that Plaintiff was permitted to return to work as of November 10, 2006, with a restriction of no lifting greater than fifteen pounds; that a week later she was allowed to return to work as of November 19, 2006, with no restrictions; that a November 17, 2006 lumbar myelogram showed small central extradural defects and a ventral extradural defect with spinal stenosis; and that findings from a post-myelogram CT scan were consistent with the myelogram. The ALJ considered that Plaintiff had a lumbar discogram in December 2006, and that a post-discogram lumbar CT scan showed lateral bulging on at L2-3, on the right, and L3-4, on the left, degenerated grade V discs at L4-5 and L5-S1, and degenerated grade II disc at S1-2 interspace. The ALJ considered the March 2007 progress notes from Dr. Shitut, as discussed above in regard to Plaintiff's smoking and weight, and that these notes also reflect that Plaintiff was diagnosed with degenerative disc disease and that fusion "may not help." The ALJ considered Dr. Shitut's July 27, 2007 progress notes, as discussed above in regard to Plaintiff's smoking and weight, as well as Dr. Shitut's report on this date that Plaintiff had "no radicular pain." Tr. 13. As also discussed above, in regard to Plaintiff's smoking and weight, the ALJ considered records from Byrnes Medical Center. The ALJ further considered that on August 26, 2008, Plaintiff had an injection to the left shoulder; that September 3, 2008 x-rays were negative in regard to Plaintiff's hips, bilaterally; that September 3, 2008 lumbar x-rays showed spondylosis, mild scoliosis, and unilateral sacralization of L5 on the right; and that October 2008 x-rays showed multilevel degenerative disease. Tr. 12-13. The court finds that

17

the ALJ's consideration of Plaintiff's medical records in regard to his determining her RFC is based on substantial evidence.

In addition to considering Plaintiff's medical records, the ALJ considered all other relevant, credible evidence in the record, including Plaintiff's testimony regarding her limitations. See Tucker, 363 F.3d at 783; Anderson, 51 F.3d 779. In particular, the ALJ considered Plaintiff's testimony that she can stand for thirty to forty-five minutes; that she can sit from five minutes to a "couple of hours," depending on the chair; that the most she can lift is five pounds; that her hands swell after forty-five minutes to an hour when using a computer; that she last worked as a cashier; that she was fired for not coming to work after an ice storm; that she drives part-time when not on medication; that she cannot work because of pain in her back, shoulders, hips, knees, and neck; that her back pain is constant; that her other pain comes and goes; that she takes Vicodin four times a day; and that injections had not helped her pain. Tr. 14. The ALJ found, as discussed above, that Plaintiff was not fully credible based on discrepancies in the record which detracted from her credibility. See Eichelberger, 290 F.3d at 589. The court finds that the ALJ's determination that there were discrepancies in the record which detract from Plaintiff's credibility is based on substantial evidence. The ALJ identified Plaintiff's functional limitations and restrictions and then assessed her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris, 356 F.3d at 929. Upon determining Plaintiff's RFC the ALJ properly assumed his role of resolving conflicts in the record. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). Only after considering all the evidence and resolving conflicts did the ALJ find Plaintiff had the RFC to perform the full range of sedentary work. The court finds that the ALJ's assessment of Plaintiff's RFC is based upon and is consistent with all of the relevant evidence, including the medical evidence. See McKinney v. Apfel,

228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

The court finds, despite Plaintiff's contention to the contrary, that the ALJ did not ignore evidence presented by Plaintiff. To the extent that the ALJ did not address every scintilla of evidence, an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. See Moore ex rel. Moore v. Barnhart, 413 F.3d 718, 721 n.3 (8th Cir. 2005) ("The fact that the ALJ's decision does not specifically mention the [particular listing] does not affect our review."); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). In conclusion, the court finds that the ALJ's assessment of Plaintiff's RFC is consistent with the case law and Regulations and that it is based on substantial evidence on the record as a whole. See Lauer, 245 F.3d at 704; Singh, 222 F.3d at 451.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is no longer disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in Complaint and Brief in Support of Complaint are **DENIED;** Docs.1, 14

**IT IS FINALLY ORDERED** that a separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of October, 2010.